

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:                                ) Case No. 10-28466-C-7
                                      )
RONALD CLARK SMITH and BETTY JO       ) Adversary No. 10-2715
SMITH,                                )
                                      )
                                      )
         Debtor(s).                   )
_____)
                                      )
TOM E. MARTINSEN, SUSAN L.            )
MARTINSEN, individually and as        )
trustees of the MARTINSEN FAMILY      )
TRUST DATED MARCH 25, 1993,           )
                                      )
                                      )
         Plaintiff(s),                )
                                      )
v.                                    )
                                      )
RONALD CLARK SMITH and BETTY JO       )
SMITH,                                )
                                      )
                                      )
         Defendant(s).                )
_____)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Trial was held on November 28, 2011, before the undersigned bankruptcy judge in this adversary proceeding seeking to have a state court judgment for $1,215,235 held to be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4). The matter was continued to February 15, 2012, for findings following post-trial briefing on the effect of the decision of the Bankruptcy Appellate Panel for the Ninth Circuit in <u>Honkanen v. Hopper (In re Honkanen)</u>, 446 B.R. 373 (9th Cir. BAP 2011). The court anticipated that it would make findings of fact and conclusions of law orally on the record on February 15, 2012, if

it had not earlier determined to make findings in writing.  The post-argument briefing is now completed, and the court elects to issue written findings of fact and conclusions of law instead of making them orally on the record.

## JURISDICTION

Jurisdiction is founded on 28 U.S.C. § 1334(a).  This is a core proceeding that a bankruptcy judge may hear and determine. 28 U.S.C. § 157(b)(2)(I).  To the extent that it is ever held not to be a core proceeding that a bankruptcy judge may hear and determine, the parties have nevertheless agreed that the matter may be heard and determined by a bankruptcy judge.  28 U.S.C. § 157(c)(2).

## FINDINGS OF FACT

The plaintiffs Tom E. Martinsen and Susan L. Martinsen made real estate investments on their own account and as trustees of the Martinsen Family Trust dated March 25, 1992.

The investments were arranged and managed by defendant Ronald Smith ("Smith"), who has been a licensed real estate broker since 1988 and whose license was active at all times relevant to this adversary proceeding.

Defendant Betty Jo Smith is the spouse of Ronald Smith and co-debtor in chapter 7 case No. 10-28446.  She is a party to this adversary proceeding, because the subject debt is both a personal debt of Ronald Smith and, presumptively, a community debt.

The debtors' schedules disclosed assets said to be worth $1,201,275 and liabilities of $62,934,323.

The Martinsens' real estate investment experience is limited to having purchased their primary residence, two or three single family dwellings, and owning and operating two skating rinks in San Mateo, California. Although Smith contends that the Martinsens were sophisticated real estate investors, this court finds that the Martinsens were <u>not</u> sophisticated real estate investors as that concept is used in either the real estate industry or in the investment business.

When the Martinsens were induced to invest with Smith, they told him they were looking for "growth and monthly income."

At the outset in 2001, Smith induced the Martinsens to purchase a ten-acre parcel on Sheldon Road in Sacramento County for $671,000, in which transaction Smith acted as broker and as buying principal. Smith had originally located the parcel and located the Martinsens as investors and purported to assign his rights to the Martinsens. Their agreement contemplated monthly cash flow payments, return of the $671,000 investment, and 10 percent of net profit.

After the plaintiffs purchased the ten-acre parcel, Smith persuaded them, with a promise of an additional $50,000, to permit it to be encumbered by an additional $400,000 obligation supposedly incurred as collateral for the purchase of an adjacent 1.7-acre parcel and to permit the properties to be held by an LLC known as Sheldon-Laguna, LLC, which Smith founded in 2002 to acquire property in the Sheldon-Laguna location. The terms of the plaintiffs' investment in Sheldon-Laguna were that they were ultimately to receive the return of the $671,000 used to purchase the ten-acre parcel, plus the $50,000 fee for having permitted

the $400,000 encumbrance, plus 10 percent of the net profits.

Smith induced the Martinsens to join the LLC and permit the ten-acre parcel to be held by the LLC without telling them that he had also incurred a secured debt of $1.4 million to Intra-Pacific Commercial, Inc., that would be senior to the interest of the Martinsens.

The Sheldon-Laguna property was ultimately sold for $2.8 million on or about April 29, 2005, in a transaction handled by Smith. The profit was at least $1,042,487, after the Intra-Pacific Commercial, Inc., lien was satisfied. Smith did not tell the Martinsens the details of the transaction or the sales price. Nor did he show the Martinsens the Real Estate Settlement Statement regarding the transaction. Smith withheld that information because he did not wish to make the required payments (of $671,000, plus the encumbrance fee, plus 10 percent of the profit) to the Martinsens, which payment would have approximated $821,428, nor did Smith inform the Martinsens that he received $225,000 "outside escrow prior to close." Nor did Smith disclose to the Martinsens that he received $155,000 in deposit and extension fees and received an additional $662,487.23 on close of escrow.

Smith also induced the Martinsens to enter into an Exchange Agreement in which they purported to lease their interest in some of the Sheldon-Laguna property in exchange for an interest in an entity known as Moore Road Meadows, L.P., in which Smith was the general partner and the Moores were limited partners.

In September 2005, Smith induced the Martinsens to engage in an acquisition for Moore Road Meadows, L.P. The property

acquired was commonly known as 2725 and 2755 Moore Road, Lincoln, California. In the transaction, a loan from Intra-Pacific Commercial, Inc., in the amount of $1.3 million was paid off and was replaced by a new loan with Intra-Pacific Commercial, Inc., For $1.9 million. In that transaction, the Martinsens received $31,637.25.

At the same time in a parallel transaction, Moore Road Meadows, L.P., refinanced real estate commonly known as 2725 Moore Road, Lincoln, California. A loan from Intra-Pacific Commercial, Inc., of $1,450,000 was replaced by a loan of $2 million by the same entity. The Martinsens received $7,883.41 from that transaction.

In 2006, Smith, as general partner, refinanced the Moore Road Meadows, L.P., properties for $4 million when he obtained the Martinsens' signatures as limited partners approving the transaction. Smith did not disclose to the Martinsens that he intended to use the proceeds for purposes not related to the properties of Moore Road Meadows, L.P. Only $400,000 of that $4 million has been accounted for. Only $400,000 was used for the Moore Road Meadows, L.P., project; the balance was used by Smith for other purposes.

The Martinsens' share of the $3.6 million that has not been accounted for based upon their 22.3 percent interest in Moore Road Meadows, L.P., was $802,800.

Also in March 2005, Smith induced the Martinsens to exchange their two rental homes through an IRS 1031 tax deferred exchange for an interest in a project known as El Dorado Hills Self-Storage, which was to be accomplished by way of what Smith called

a tenancy-in-common agreement.  The exchange was accomplished.

El Dorado Hills Self-Storage became insolvent.  The properties of Moore Road Meadows, L.P., were foreclosed upon.  The Martinsens were left with nothing.

As a result of these transactions, the debtors sued Smith in the case styled Tom Martinsen, et al. v. Ronald C. Smith, Superior Court of the State of California, County of Placer, Case No. SCV23810, on March 4, 2008.  Judgment was entered based on Smith's Statement Confessing Judgment pursuant to California Code of Civil Procedure 1132-33 in the amount of $1,215,235.

CONCLUSIONS OF LAW

The question is whether the debt represented by the state court judgment is excepted from discharge either under 11 U.S.C. § 523(a)(2)(A) or § 523(a)(4) or both.  As there was no actual litigation in state court, the judgment is not eligible for issue preclusion under applicable California law, as there were no express findings regarding fraud or fiduciary defalcation. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1247 (9th Cir. 2001).

The six elements of excepting a debt from discharge pursuant to § 523(a)(2)(A) are well known.  First, debtor made a material representation.  Second, the representation was false.  Third, debtor's intention and purpose in making the representation was to deceive the creditor.  Fourth, the creditor justifiably relied on the representation.  Fifth, the creditor sustain loss or damage as the proximate result of the representation having been made.  Eugene Parks Law Corp. Defined Benefit Plan v. Kirsh (In

1  re Kirsh), 973 F.2d 1454, 1457-60 (9th Cir. 1992).

2  The court must look at all of the circumstances surrounding
3  the transaction and consider the subjective effect of the
4  circumstances on the creditor. Id. at 1460.

5  The burden of proof is preponderance of the evidence.
6  Grogan v. Garner, 498 U.S. 279, 291 (1991).

7  The court is persuaded by a preponderance of the evidence
8  that all of the essential elements of § 523(a)(2)(A) are
9  satisfied in this transaction.

10 Smith is a sophisticated real estate professional who was
11 active in orchestrating various real estate assets for
12 development. The court, after listening to his testimony, is
13 persuaded that he knew that he might be using funds of one
14 investment in connection with matters in a different investment.
15 When the initial purchase of the ten acres by the Martinsens for
16 $671,000 was accomplished, Smith knew that he would not be
17 proposing to cash them out upon the sale of the property but
18 would be trying to induce them into other investments. He was
19 impliedly representing that the simple transaction proposed at
20 the outset would remain the deal. That representation was
21 material to the Martinsens who, the court is persuaded, lacked
22 sophistication about such matters.

23 Smith's representation was false in that he knew that he
24 likely would not be closing out the first transaction by payment.
25 Hence, the representation was false, and Smith knew it. Smith's
26 intent and purpose in making the representation was to deceive
27 the Martinsens into thinking their investment was safe. The
28 Martinsens relied on Smith, who had obtained their confidence.

1  The Martinsens sustained damage as a proximate result of Smith's
2  representation having been made.
3      The same analysis applies to the representations that were
4  made as the deal changed, beginning at the time that the ten
5  acres were encumbered by an additional $400,000. Smith did not
6  disclose the existence of the $1.4 million obligation to Intra-
7  Pacific Commercial, Inc. In withholding that information, Smith
8  impliedly misrepresented that there was no such other debt.
9  Smith withheld that information in order to deceive the
10 Martinsens and to lull them into permitting the transaction. The
11 Martinsens justifiably relied on Smith's representation. Smith's
12 purpose is confirmed by his further failure to disclose the
13 details of the real estate closing to the Martinsens. The
14 Martinsens could have been paid and were not. They sustained at
15 least $821,000 in damages as the proximate result of that
16 representation.
17     Closely connected are the representations that Smith made
18 following the closing of the Sheldon-Laguna sale in which he
19 induced the Martinsens to, in effect, roll over their investment
20 into Moore Road Meadows, L.P. Smith was impliedly representing
21 that the limited partnership provided the best opportunity for
22 the Martinsens to preserve their investment and that they could
23 not otherwise be paid promptly.
24     The representations described above were false. Smith knew
25 them to be false. His purpose in making the representations was
26 to deceive the Martinsens in engaging in the various
27 transactions.
28     The court is persuaded by a preponderance of the evidence

that if the Martinsens knew the true state of affairs, they would have insisted on terminating their investments with Smith and thereby damage was proximately caused to them.

Similarly, when Smith induced the Martinsens in their capacity as limited partners to authorize the $4 million borrowing by Moore Road Meadows, L.P., Smith impliedly represented that the funds would be used for the Moore Road Meadows, L.P., project. That representation was false in that Smith intended to use the funds for purposes other than projects of which he was involved, and he knew that only about 10 percent of that amount would be used for Moore Road Meadows, L.P. Therefore, his representations were false and known by him to be false. The implied representations that the funds were exclusively for the project of Moore Road Meadows, L.P., were accordingly false and made with the intention of inducing the Martinsens, as well as the other limited partners, to approve the transaction. The Martinsens justifiably relied on Smith's representations and sufficient damages were sustained when the property was lost to foreclosure in which approximately $3.6 million of the $4 million borrowed could not be accounted for by Smith.

In short, there are multiple instances of actionable misrepresentations. It follows that the judgment of $1,215,235 is excepted from discharge under § 523(a)(2)(A) for multiple, adequate, independent reasons.

In light of this conclusion, it is not necessary to consider whether Smith's conduct in the various transactions, including, especially, the failure to account for $3.6 million borrowed by

1 | Moore Road Meadows, L.P., and used for other purposes, would also
2 | justify an exception from discharge under § 523(a)(4).
3 |     An appropriate judgment will issue.
4 |     Dated:   February 17, 2012.

_____
UNITED STATES BANKRUPTCY JUDGE

**CERTIFICATE OF SERVICE**

On the date indicated below, I served a true and correct copy(ies) of the attached document by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed and by depositing said envelope in the United States mail or by placing said copy(ies) into an interoffice delivery receptacle located in the Clerk's Office.

John G. Downing
10069 W River St #6C
Truckee CA 96161

Ronald Clark Smith
2511 Cypress Ct
Rocklin CA 95765

Betty Jo Smith
2511 Cypress Ct
Rocklin CA 95765

Dated: 2/23/12

_____
DEPUTY CLERK